Thank you, Your Honor. Good morning, Your Honors. I'm sorry, good afternoon, Your Honors. May it please the Court. My name is Margaret Fearon from the Federal Public Defender's Office, and I'm appearing today on behalf of the defendant and appellant, Miguel Hurtado. And thank you, Your Honor. I would like to reserve two minutes for rebuttal, please. I would like to focus my argument today on three overall points that relate to the juror misconduct issue that's sort of the primary issue that's focused on by the parties here. First, I want to talk about how the district court erred and why its analysis was inconsistent with the controlling law in the Remmer and Goodway. And you answer the question as to why there was no objection and why there was, in fact, an agreement with what the district court initially was going to do. Well, Your Honor, there wasn't an objection to the failure to question other jurors. I agree with that. Why that happened, I think actually it's pretty clear from the record why. I think all parties in the court didn't understand what the controlling law was. Nobody mentioned Goodway, Remmer, or Maddox, which are the clearly controlling authorities here. And so the standard was not applied. So I'll just talk right now about why the district court's analysis and what it did was not correct under Goodway, Remmer. First of all, the juror focused on only the juror himself and didn't consider the possible impact on other jurors from what Juror 10 discussed with the county prosecutor. This is contrary to Goodway because impact on other jurors is actually a central and core aspect of the Remmer-Goodway analysis. Can I ask, because I thought, maybe I'm misremembering, but I thought there was a question about what was said to the other jurors and the district court got that information from what Juror 10 got dismissed? Well, the court asked at one point, what did you say to the other jurors? And Juror 10 was equivocal. He didn't purport to say everything he told. He said, I'm trying to remember what I said. He listed a few things and then he kind of stopped. And there was no follow-up to that issue. I think that a key point here is the credibility and the sufficiency of Juror 10 himself. This court in Angulo and Brand talk about the credibility of the source. Juror 10 was the only juror that was questioned by the court hearing. He was the one who had the conversation with the prosecutor on the bus. So he's the only source of information about what was communicated to other jurors. Although there was another juror who reported this contact. She said she walked in partway through the conversation, so she didn't know what all was said. What authority do you have that there has to be an evidentiary hearing on every allegation, regardless of whether it's sought or not? I'm not arguing, Your Honor. I don't think anyone would argue that an evidentiary hearing has to be had on every allegation. But I think it's very clear under Maddox, Remmer, and Godoy and the other decisions that there is a need for an evidentiary hearing on a possibly prejudicial communication. Don't you have to have some evidence of prejudice? Some indication? You have to have possible prejudice. I know that the government here says possibility isn't enough, but that actually is the core of this circuit's decisions. Over and over again, Angulo, Brand, Simtad, the court says it's possible and we don't know and that's why we need an evidentiary hearing. In Dutkill and Henley, those are the circuit's cases about juror bribes. They say we don't know if the other jurors ever heard anything about this, but they could have heard and it's possible. And that's the core of the inquiry. That weighs for a hearing, not against one. We'll say it is pretty clear that you don't have to have it on every allegation, especially when the defendant doesn't even request it. Why should we make an exception here? It's not a posit here. On the basis of a very ambiguous comment made by the juror to the state prosecutor. Let's focus on what we know here. We know that a juror, during deliberations, talked to an officer of the court, a prosecutor. We know that that prosecutor discussed his opinion of the law. He expressed surprise that this case was pending in federal court. He said it could be brought sometime in state court, sometimes in federal court. Depending on how serious the allegations are, the charges are. That was the end of it, when the other juror came and said, hey, you can't talk about it. So, Your Honor, I don't think we know that. I think, once again, looking at... You're guessing. You're purely guessing. I think that's kind of the point, Your Honor, is that that's actually what we're supposed to do here, and that weighs for a hearing. Because in Dutkow, there was allegations that one of the jurors had been bribed, and the court had no idea whether anything was said to other jurors about that. And precisely... I don't think we... I just... That's where I... I don't think that's accurate. I mean, I think if Juror 10 had agreed that he said that other information, that would be one thing. But, as I understand the record, I mean, from ER 152, that basically, Juror 10, when he was asked how much of this information he relayed, Juror 10 stated that he relayed the county prosecutor's praise for the judge, and told the jurors that the county prosecutor had asked what kind of case it was, and then the fellow jurors ended the conversation. So, this is... Go ahead. Yes, Your Honor. In 152, the court said, what, if anything, of the conversation that you've relayed to us, have you relayed to your fellow jurors? And the jurors said, I did mention to them about your notoriety, that he mentioned to me, I did mention that, and I'm trying to remember what else I mentioned to him in terms of... I did tell them that the gentleman had asked me what type of case this was. And then that's when everyone said we shouldn't be talking about this. He never said he didn't talk about the jurisdictional stuff. And also, Your Honor, credibility in the Brandt case of this man is key. I want to point out to Your Honors, this juror here... Excuse me. He only talked... Just a minute. I'm sorry. Are you talking about plain error here now? It's plain error because he didn't receive... Until it was not raised in the brief in chief? Not until the reply brief? I'm sorry, Your Honor.  You did not raise plain error in your brief in chief. You did not argue plain error. Well, actually, no. I'm not sure that that's correct, Your Honor. I would have to look. But I think that I've always argued that the prejudice here was the denial of a hearing. Well, that was prejudice, but you didn't argue it was plain error. And there was no objection. And ordinarily, that constitutes a waiver. I don't think no objection does constitute a waiver, Your Honor. Under Perez and DePue, there has to be an actual knowing relinquishment of a right that's brought to the party's attention. And that's under Olano, DePue, and Perez. Well, that's at least a forfeiture when it's not objected to, which we then can only review for clear error. I think the standard is plain error for forfeiture, Your Honor, which is not quite the same thing as clear error. Yeah, I meant to say plain error. But one of the elements of plain error is the fourth one. That is that even if there's an error, even if it's obvious, even if it affects substantial rights, it has to impair the fairness, integrity, or reputation of the court if it's not recognized. So how does the error here impair the fairness, integrity, or reputation of the court if we don't buy your argument? Your Honor, so Dunkel talks about how the right to an impartial jury is really the cornerstone of the Sixth Amendment right to a fair trial. The court has a special duty in these types of cases, more so than in the ordinary case. Even if, and this says in Angulo and Brand, even if the court, even if the party doesn't raise it precisely, correctly, or maybe misses something, there's a special duty on the part of the court because this right is so important. And we never are going to know exactly what effect it had on the jury, and we shouldn't know because we don't ever get to know exactly why the jury did what it did. But that's why the courts and this court and the Supreme Court have weighted the analysis on the side of the petitioner and on the side of the right to a fair jury, and prejudice is presumed. And that's why it reflects on the fairness and the integrity of Mr. Hurtado's trial in the court proceedings, Your Honor. Hey, Counsel. I'd like to... You've gone past the two minutes you'd planned to save for rebuttal, and I'll add to your time so you can have your two minutes of rebuttal. I appreciate it, Your Honor. Thank you. We'll now proceed with the argument of the appellee. Good afternoon. May it please the court. My name is Alexander Robbins on behalf of the United States. With the court's permission, I'd like to start off with this issue of what's possible and sort of the possibility speculation point that we raised in footnote five on page 26 of our brief. I want to be clear about something. We're not suggesting that possibility is the wrong standard. I think that maybe the confusion here is the question of what it is that's possible. What are we talking about? There's two different communications, and I think the district court correctly honed in on this distinction. There's the question of what the prosecutor on the bus told juror number 10, and then there's the question of what juror number 10 told the rest of the jury. And we agree that, and I think the district court correctly honed in on this, that the full extent of what the prosecutor on the bus told juror number 10 was possibly prejudicial. That's why he inquired. He had an evidentiary hearing and inquired of that juror specifically. And that's why the court and all the parties agreed to remove that juror and instruct, seat an alternate juror and instruct the rest of the jury to start their deliberations anew. That's one issue. If you agree with that, then why isn't it error for the district court to have fully confirmed exactly what was said? And if there was a doubt in juror number 10's head, then why wasn't it error for the judge to call in one or two of the other jurors and ask them and see if their recollection matched up? Because that's not the record, Your Honor. On page 152, as this court mentioned, of the excerpts of record, the district judge correctly asked the right question, what did you relay to the other jurors? And contrary, with respect to my colleague, contrary to the statement in the reply brief on page 12, the juror did not say, I don't remember or I don't remember everything. Like the word everything doesn't show up until much later. The juror said, I did mention to them about your notoriety. And then he paused and said, I'm trying to remember. And then said the second item that he conveyed, which was, I did tell them that the gentleman asked me what type of case this was. And that's when everyone said, we really shouldn't be talking about this. And I would point out that the verbiage, shouldn't be talking about this, almost exactly matches what the district judge heard indirectly from the reporting juror. On page 146 of the record, uses the same language. When the judge is putting on the record what happened, according to the reporting juror, says, that's when, I think he didn't say that's when, he uses the same phrase, shouldn't be talking about this. That's on page 146. Everyone agreed, both the reporting juror and the statement from the bus riding juror, with the district court's ultimate factual statement on the record. Later on, on page 162, where the district judge says, nothing inappropriate was, or I don't find that anything inappropriate was communicated from the bus riding juror to the remaining jurors. That's the state of the record. And that's the state of the record according to the district judge, whose findings are reviewed for clear based on the record before it. So the state of this record is different than I think what the defense would have it. And the two questions of the juror who was exposed to potentially prejudicial outside influence is a distinct question because of the good work of the district judge here in removing that juror. That's a separate question from what was communicated to the other jurors. And the cases that the defense relies on, almost invariably, or I think actually invariably all of them, rely on situations where, Sim Tom for example, where somebody was on the jury the whole time. And so yes, the courts have said, understandably and reasonably, that if someone is exposed to potential outside influence and then deliberates on a jury, we have no way of knowing what aspects of that outside influence during the deliberations that one juror passed on to his fellow jurors. That's certainly not the case here. District judge honed in on exactly the issue and got on the record from two different sources that after those two facts came out, who's the judge, he's notable, and what kind of case is this? That's when everyone stopped talking about it. That's consistent again with the court's findings on page 162. I would also point out on the forfeiture waiver clear error issue, just briefly procedurally. I think that our first, certainly plain error applies here. And as we argued in our brief, there's no authority that we're aware of that undoes the plain error rule, which all agree the plain error rule under Rule 52 in Alano puts the burden to show prejudice, to show miscarriage of justice onto the party raising error. Nothing in Godoy or Remmer undoes that. So even if the court doesn't agree with argument on Godoy Step 1, which we think is the most straightforward way to dispose of this, the defendant would still bear the burden of showing prejudice on Godoy Step 2 under the plain error standard. The distinction that the defendant attempts to make in his reply brief about Alano not touching on the Remmer issue is a separate question. Alano reserved whether there's ever a situation where he could have an inquiry like this under Remmer. And we're not going that far to say that per se you can't do that. We're simply pointing to Alano's authority for the fact that the burden of burden of proof here on prejudice and on a miscarriage of justice is squarely remains on the defense, even if you don't find a way for him. Unless the court has any more questions, any further questions, we'll submit on our brief. Any questions from Judge Nelson or Judge Kelly? No questions here. Therefore, the government's argument may conclude. Thank you, Your Honor. Yes, just briefly a couple of points. The government said that invariably the cases that Mr. Hurtado relies on involved jurors who were just who were not dismissed and set on the jury. That's actually incorrect. Angulo, which is a very important decision from this court, involved a juror who was dismissed. And the error there was that the court didn't go further and say, well, what was the impact on the other jurors? In Angulo, a juror received a threatening phone call from somebody saying, I know where you live. She told the other jurors about that.  Well, here, I understand, Your Honor, we've talked about what exactly was communicated, but there was no curative instruction. Juror 10 was just dismissed. And defense counsel didn't agree with that course. He said, I want them to be told to follow the law. And the court said, well, I'm just going to say resume your deliberations. Anyway, so Angulo involves a juror who was dismissed. The court's ruling here about the facts or the merits of the case is contrary to Godoy in a very clear way, because it's talking about the facts of the merits. And almost all of the cases from this court in recent years, Godoy, Tarango, Brandt, Caliendo, talk about communications that don't have to do with the merits or the facts. And so that was clearly a misapplication of Godoy. And so with that, I would just say that this was a failure to kind of get to what transpired in the district court. And that's the core of the question under Godoy. We need to nail that down. The prejudice was the denial of a hearing into that issue. And I think Remmer reserved the possibility that there could be a remand for such a hearing. And in the Aguilar case, that's exactly what the Eighth Circuit did. It said we need to remand for a hearing to clear this up and make sure there was no prejudice to the jury's deliberations. And I would say also under Dutkow that that's separate from an impact on the verdict. In Dutkow, this court said whether the actual determination of the jury was affected isn't the issue. It was whether it materially impacted the course of the deliberations.  Thank you, Counsel. Well, I think I want to thank both Counsel for Appellate and Counsel for Appellee for their spirited and talented advocacy presenting these issues. I wish the court could give each of you a special pin for helping us out during a pandemic. But all it doesn't, so all you're going to get is thanks from the panel. But I'm sure my colleagues join me in thanking. Thank you very much. Thank you, Judge Gold. The Hurtado case shall now be submitted and the parties will hear from us in due course.
judges: Kelly, Gould, Nelson